**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Todd Miller, individually on behalf of himself and all others similarly situated, | x : : |
| Plaintiff, | : Case No. : |
| v. | : : |
| | : |
| Beyond Meat, Inc., | : **CLASS ACTION** |
| | : **COMPLAINT** |
| Defendant. | : |
| | : **JURY TRIAL DEMANDED** |
| | : : |
| | x |

Plaintiff, Todd Miller (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of Beyond Meat, Inc. (hereinafter "Defendant") with respect to the marketing and sales of Defendant's Beyond Meat product line throughout the state of New York and throughout the country.  Defendant's Beyond Meat product line includes, but is not limited to, the following products (hereinafter the "Products"):

- Beyond Meat Sausage Plant-Based Dinner Links Hot Italian 14 oz;

- Beyond Meat Beyond Sausage Plant-Based Sausage Links Brat Original 14 oz;

- Beyond Meat Beyond Beef Plant-Based 16oz Patties;

- Beyond Meat Beyond Beef Plant-Based Ground Beef;

- Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Patties Classic 7.4 oz;

- Beyond Meat Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Patties Spicy 7.4 oz;

- Beyond Meat Beyond Chicken Plant-Based Breaded Tenders Classic 8 oz;

- Beyond Meat Beyond Meatballs Italian Style Plant-Based Meatballs 12 ct. Classic 10 oz; and

- Beyond Meat Beyond Breakfast Sausage Plant-Based Breakfast Links Classic 8.3 oz.

2.      Defendant manufactures, sells, and distributes the Products with front and back labeling that describes the amount of protein contained in the Products, which is expressed in grams per serving and as a "Daily Value" (hereinafter "DV") percentage.

3.      Examples of Defendant's Products with these representations are depicted below:









## Nutrition Facts

3 servings per container
**Serving size  2 cooked patties (58g)**

**Amount per serving**
# Calories 180

| | % Daily Value* |
|---|---|
| **Total Fat** 12g | **15%** |
| Saturated Fat 4.5g | **23%** |
| *Trans* Fat 0g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 270mg | **12%** |
| **Total Carbohydrate** 6g | **2%** |
| Dietary Fiber 2g | **7%** |
| Total Sugars 0g | |
| Includes 0g Added Sugars | 0% |
| **Protein** 11g | **22%** |
| Vitamin D 0mcg | 0% |
| Calcium 60mg | 4% |
| Iron 2.8mg | 15% |
| Potassium 230mg | 5% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories in a day is used for general nutrition advice.

6





## Nutrition Facts

About 2.5 servings per container

**Serving size**　　　5 Meatballs (4.3oz/121g)
　　　　　　　　　　12 Meatballs (10oz/290g)

| **Calories** | Per 121g - Rounded **290** | | Entire Package **700** | |
|---|---|---|---|---|
| | | % DV* | | % DV* |
| **Total Fat** | 21g | **27%** | 51g | **65%** |
| Saturated Fat | 7g | **35%** | 17g | **85%** |
| *Trans* Fat | 0g | | 0.5g | |
| **Cholesterol** | 0mg | **0%** | 0mg | **0%** |
| **Sodium** | 500mg | **22%** | 1200mg | **52%** |
| **Total Carb.** | 9g | **3%** | 21g | **8%** |
| Dietary Fiber | 3g | **7%** | 8g | **29%** |
| Total Sugars | 0g | | 0g | |
| Total Added Sugars | 0g | 0% | 0g | |
| **Protein** | 19g | **38%** | 46g | **92%** |
| Vitamin D | 0mcg | 0% | 0mcg | 0% |
| Calcium | 110mg | 8% | 260mg | 20% |
| Iron | 4.9mg | 25% | 11.8mg | 70% |
| Potassium | 460mg | 10% | 1110mg | 25% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.



**Nutrition Facts**

4 servings per container
**Serving size 2 cooked links (46g/1.6oz)**

**Amount per serving**
**Calories** — 130

| | % Daily Value* |
|---|---|
| **Total Fat** 9g | **12%** |
| Saturated Fat 3g | **15%** |
| *Trans* Fat 0g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 240mg | **10%** |
| **Total Carbohydrate** 3g | **1%** |
| Dietary Fiber 2g | **7%** |
| Total Sugars 0g | |
| Includes 0g Added Sugars | **0%** |
| **Protein** 8g | **16%** |
| Vitamin D 0mcg | 0% |
| Calcium 50mg | 4% |
| Iron 1.8mg | 10% |
| Potassium 220mg | 4% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories in a day is used for general nutrition advice.



| Nutrition Facts | |
| --- | --- |
| 4 servings per container | |
| **Serving size** | **4 oz (113g)** |
| **Amount per serving** | |
| **Calories** | **230** |
| | **% Daily Value*** |
| **Total Fat** 14g | **18%** |
| Saturated Fat 5g | **25%** |
| Trans Fat 0g | |
| Polyunsaturated Fat 3g | |
| Monounsaturated Fat 6g | |
| **Cholesterol** 0mg | **0%** |
| **Sodium** 390mg | **17%** |
| **Total Carbohydrate** 7g | **3%** |
| Dietary Fiber 2g | **7%** |
| Total Sugars 0g | |
| Includes 0g Added Sugars | **0%** |
| **Protein** 20g | **40%** |
| Vitamin D 0mcg | 0% |
| Calcium 100mg | 8% |
| Iron 4mg | 20% |
| Potassium 330mg | 6% |
| Niacin 4.7mg NE | 30% |
| Vitamin B6 0.3mg | 15% |
| Vitamin B12 2.4mcg | 100% |
| Pantothenic Acid 0.5mg | 10% |
| Zinc 4.6mg | 40% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories in a day is used for general nutrition advice.

4.      However, as explained in further detail below, testing has confirmed that Defendant's Products do not contain the amount of protein (both in grams per serving and DV percentage) shown on the Products' front and back labeling.

5.      Reasonable consumers believe that products that claim to have a certain amount of protein do indeed have the alleged serving and percentage of protein contained therein; however, Defendant's advertising and marketing campaign is false, deceptive, and misleading since the Products contain less protein than stated on the Products' front and back labeling.

6.      Plaintiff and those similarly situated (hereinafter "Class Members") relied on Defendant's misrepresentations regarding the amount of protein contained in the Products when purchasing the Products.  Plaintiff and Class Members overpaid and/or paid a premium for the Products based upon these false and misleading representations and statements.  Given that Plaintiff and Class Members paid a premium price for Products based on Defendant's misrepresentations regarding the amount of protein contained therein and actually received less protein per serving and DV percentage, Plaintiff and Class Members suffered an injury as a result of Beyond Meat's conduct, including that they purchased Beyond Meat's Products (a) that were worth less than the price they paid, (b) which they would not have purchased at all for this price had they known the actual content of Beyond Meat's products, and (c) which do not conform to the Products' labels, packaging advertising, and statements.

7.      Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, and the consumer protection statutes of all 50 states. Defendant breached and continues to breach its express and implied warranties regarding the Products.  Accordingly, Plaintiff brings this action against Defendant on behalf of himself and

Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

8.    Defendant manufactures, advertises, and sells plant-based meat substitute products, akin to the Products, and describes itself as a "leader in plant-based meat" and as a "Revolutionary Plant-Based Protein Leader."[1]

9.    Companies such as Defendant have capitalized on consumers' desire for purported plant-based meat products that provide as much, if not more, protein, than regular meat.  Indeed, consumers are willing to pay, and have paid, a premium for plant-based meat protein products over products that contain non-plant-based ingredients.  In January 2022 it was projected that the plant-based protein market will be worth $23.4 billion by 2028[2], which is almost twice as much of the current $12.2 billion estimation.[3]  Reasonable consumers, including Plaintiff and Class Members, value plant-based protein products for important reasons, including the belief that they are safer and healthier than alternative products that contain ingredients that are animal or petroleum based.

10.    Moreover, as Defendant knows, protein is a vital part of every health diet and many consumers seek out high-protein healthy alternative products to meat.  This is even more so true for vegans who face more of a challenge to obtain sufficient protein intake in their diets and therefore seek out plant-based protein products akin to Defendant's Products.

11.    Defendant, being aware of this trend, engages in a marketing campaign that is designed to attract reasonable consumers into thinking its Products are good plant-based protein

---

[1] https://investors.beyondmeat.com/news-releases/news-release-details/revolutionary-plant-based-protein-leader-beyond-meatr-announces.

[2] https://www.globenewswire.com/en/news-release/2022/01/03/2360111/0/en/Plant-Based-Protein-Market-Worth-23-4-Billion-By-2028-Exclusive-Report-by-Meticulous-Research.html.

[3] https://www.marketsandmarkets.com/Market-Reports/plant-based-protein-market-14715651.html.

source alternatives to traditional meat by teaming up with athletes that use the slogan, "#FutureOfProtein,"[4] on its social media platforms.   Examples of this marketing campaign are depicted below:





[4] https://www.beyondmeat.com/en-US/whats-new/beyond-meat-teams-up-with-elite-athletes-to-plant-the-future-of-protein#:~:text=At%20Beyond%20Meat%2C%20our%20plant,partners%20will%20lead%20the%20way.%22.

12.     Unfortunately for targeted consumers, independent testing has confirmed that Defendant's Products do not contain the alleged and promised amount of protein.

13.     Defendant engages in intensive protein focused marketing campaigns because it knows that protein is a vital component of a healthy diet and necessary for normal bodily functions.[5] Additionally, Defendant knows it is more difficult for vegans to find protein alternative sources and is consciously trying to lure vegans into thinking its Products can provide them with the protein their bodies need to operate at full capacity.

14.     The Food and Drug Administration (hereinafter "FDA"), states, "Protein… is necessary for proper growth and development, especially during childhood, adolescence, and pregnancy.  [It] helps your body build and repair cells and body tissue and is important for many body processes, such as blood clotting, fluid balance immune response, vision, and production of hormones, antibodies and enzymes."[6]

15.     Further, according to the FDA, a high-protein diet provides additional benefits, including appetite control, weight and body composition management, muscle growth and maintenance, improved cardiometabolic health, better strength, improved immune function, and faster tissue recovery.[7]

16.     Due to these aforementioned benefits from protein consumption, many consumers seek high-protein products, like the misrepresented Products, to achieve a high-protein diet.  This is even more so true for consumers, like vegans, that look for meat alternatives to acquire needed protein intake.

---

[5] https://www.piedmont.org/living-better/why-is-protein-important-in-your-diet.
[6] https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/assets/InteractiveNFL_Protein_March2020.pdf.
[7] *Id.*

17.     Consumers with specific health concerns, including pregnant and breastfeeding people, or conditions that inhibit protein absorption, also require more protein than the daily recommended minimum for average individuals[8], which is 56 grams per day of protein for the average sedentary man and 46 grams of protein per day for the average sedentary woman per the Dietary Reference Intake.[9]

18.     To that effect, the FDA mandates food manufacturers to publish a product's contents on its nutritional label, which includes the number of grams of protein per serving. [10]

19.     Most often the "Nitrogen Content Method"[11] is used to calculate the protein content of a food product.  Pursuant to this calculation, protein content is computed by using the factor of 6.25 times the nitrogen content of the food as prescribed by the "Official Methods of Analysis of the AOAC International," unless there is another official procedure for a specific food that requires a different factor.[12]

20.     However, the nitrogen method is not the most accurate method to calculate protein content.  Consequently, federal law requires protein content to be determined through a more rigorous testing system called the Protein Digestibility Amino Acid Corrected Score (hereinafter "PDCAAS") to compute the corrected amount of protein per serving in each product.[13]

21.     Per the PDCAAS, the corrected amount of protein gram per serving is equal to the amount of protein gram per serving multiplied by the amino acid score corrected for protein

---

[8] *Id.*
[9] https://www.healthline.com/nutrition/how-much-protein-per-day.
[10] https://www.fda.gov/food/food-labeling-nutrition/menu-labeling-requirements.
[11] https://byjus.com/chemistry/kjeldahl-method/.
[12] https://www.aoac.org/about-aoac-international/.
[13] https://www.cerealsgrains.org/publications/plexus/cfw/pastissues/2018/Documents/CFW-63-5-0207.pdf.

digestibility, which is ascertained by methods provided in the "Protein Quality Evaluation, Report of the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation," Rome, 1990.[14]

22.      Accordingly, as prescribed by federal law, Defendant must use the PDCAAS calculation for the Products rather than a method of its choice, such as the "Nitrogen Content Method" referenced above, even if commonly recognized.   Moreover, any product making a protein claim, like Defendant, must include a statement of protein content as percentage of the Daily Reference Value, which is calculated by using the corrected amount of protein methodology.

23.      The corrected amount of protein analysis does not come to its conclusions by merely multiplying the amount of nitrogen by 6.25, as Defendant would like.   Instead, the protein content is calculated by accounting for the "protein quality value" of the product or the "protein digestibility corrected amino acid score."   *See* 21 C.F.R. § 101.9(c)(7)(ii).

24.      Consequently, so too here, Defendant's Products' protein content must be stated as a DV percentage by using the corrected amount of protein analysis.

25.      Using the PDCAAS method for calculating the amount of protein, independent testing has revealed that Defendant has over-stated the amount of protein in its Products.

26.      This testing, which confirmed Defendant's Products contains less protein than stated on the Products' packaging and labeling, was conducted by two different independent U.S. laboratories that separately conducted testing on a wide range of Defendant's Products.   The test results from these two laboratories were consistent in that both results revealed Defendant's Products to contain significantly less protein that what was labeled on its front and back packaging.

27.      Additional independent testing by Plaintiff's counsel also confirmed that Defendant's Products contained less protein than advertised and marketed.   Specifically,

---

[14] http://www.foodcompliance.com/Government_Connection/Label_Regulations/regulation.jsp?R=650; *see also* 9 C.F.R. 317.309.

independent testing of the Products revealed at least a 15-20% differential of protein content between what is stated on the Products' labeling as opposed to what is actually in the Products. This discrepancy in protein content is harmful to the consumers in that they paid a premium price for Products with the belief they contained more protein.[15]

28.     Thus, Defendant's alleged protein amount and protein DV percentage are false and misleading since the amount of protein determined by nitrogen in Defendant's Products is a mischaracterization of the actual amounts of protein contained in its Products and not an accurate depiction of the actual amount of protein when utilizing calculation methods mandated by federal law.

29.     Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to their knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

30.     Consumers rely on marketing and information especially the information and representations on the packaging and labels in making purchasing decisions.

31.     Defendants' marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.  As such, a reasonable consumer reviewing Defendants' labels reasonably believes that they are purchasing a

---

[15] For example, Defendant's Plant-Based 20 grams of protein "Beyond Burger" costs approximately $7.89.  *See*, https://www.doordash.com/convenience/store/2389715/product-details/1209939861/.  However, Dr. Praeger's Plant-Based 20 grams of protein "Perfect Burger" costs approximately $5.99.  *See*, https://www.freshdirect.com/pdp.jsp?productId=fro_pid_3503647&catId=fro_meatl_burg.

product that contains the stated amount of protein.  Indeed, consumers expect the nutritional facts or information on the packaging and labels to accurately disclose the amount of protein within the Products.  Thus, reasonable consumers would not think that Defendants are misrepresenting the amount of the protein in the Products.

32.     By marketing the Products as having more protein content than they actually do, and by placing these representations in prominent locations on the labels of the Products throughout the Class Period, Defendant knows that these claims are material to consumers.

33.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

34.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions regarding protein in Products.

35.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

36.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would purchase the Products and pay a premium for products marketed as having certain amounts of protein over comparable products not so marketed.

37.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

a.      Paid a sum of money for Products that they would not have purchased had they known the truth about the amount of protein in the Products;

b.      Paid a sum of money for Products that were not what Defendant represented;

c.      Paid a premium price for Products that were not what Defendant represented;

d.      Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

e.      Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

38.      Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

39.      Plaintiff and the Class Members paid for Products that had a certain amount of protein and they believed were proven to have specified amounts of protein.  Consequently, the Products Plaintiff and the Class Members received was worth less than the Products for which they paid.

40.      Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

41.     Plaintiff and Class Members read and relied on Defendant's representations about the benefits of using the Products and purchased Defendant's Products based thereon.  Had Plaintiff and Class Members known the truth about the Products, i.e., that they do not have the benefits they say they do (i.e., amounts of protein), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

## JURISDICTION AND VENUE

42.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the state of New York, Defendant Beyond Meat, Inc. is a citizen of the states of Delaware and California; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

43.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the State of New York, and supplies goods within the state of New York.

44.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

### Plaintiff

45.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York State.  Plaintiff purchased the products at multiple supermarkets throughout New York City, including Citarella's supermarket, during the class period.  The packaging of the Products Plaintiff purchased contained the representations that they had greater amounts of protein

than they actually have based upon independent testing.  Plaintiff believes that products that are labeled with specific amounts of protein actually contain the amounts of alleged proteins. If the Products actually had the amounts of stated proteins as represented on the Products' label, Plaintiff would purchase the Products in the immediate future.

46.     Had Defendant not made the false, misleading, and deceptive representations that the Products had the amounts of protein alleged Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than he would have had he known the truth about the Products. The Products Plaintiff received were worth less than the Products for which he paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

47.     Defendant, Beyond Meat, Inc., is a Delaware corporation with its principal place of business in El Segundo, California.  Defendant manufactures, markets, advertises and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

## CLASS ALLEGATIONS

48.     Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

49.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

50.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

51.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

52.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

53.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

54.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.      Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.      Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.      Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

22

d.      Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public; and

e.      Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

55.     <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

56.     <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class and he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

57.     <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

58.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.      The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

23

b.      The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.      When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.      This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.      This class action will assure uniformity of decisions among Class Members; The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

g.      The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.      It would be desirable to concentrate in this single venue the litigation of all class members who were induced by Defendant's uniform false advertising to purchase its Products providing certain amounts of protein.

59.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATIONS OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

60.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

61.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

62.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages.

63.     Defendant misleadingly, inaccurately, and deceptively advertise and market the Products to consumers.

64.     Defendant's improper consumer-oriented conduct (including labeling and advertising the Products as including certain amounts of protien) is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

25

65.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that (contrary to Defendant's representations) do not have the amount of alleged protein.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

66.     Defendant's advertising and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

67.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

68.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

69.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

71.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment

opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statements, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

72.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products contain certain amounts of protein.

73.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which (contrary to Defendant's representations) does not contain the amounts of alleged protein. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

74.     Defendant's advertising and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

75.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

76.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

77.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and on the Products' labeling.

78.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.   Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

79.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

80.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81.    Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products provide certain amounts of protein.

82.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

83.    These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

84.    Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

85.     Within a reasonable time after he knew or should have known of Defendant's breach, Plaintiff, on behalf of himself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.

86.     Defendant thereby breached the following state warranty laws:

a.      Code of Ala. § 7-2-313;

b.      Alaska Stat. § 45.02.313;

c.      A.R.S. § 47-2313;

d.      A.C.A. § 4-2-313;

e.      Cal. Comm. Code § 2313;

f.      Colo. Rev. Stat. § 4-2-313;

g.      Conn. Gen. Stat. § 42a-2-313;

h.      6 Del. C. § 2-313;

i.      D.C. Code § 28:2-313;

j.      Fla. Stat. § 672.313;

k.      O.C.G.A. § 11-2-313;

l.      H.R.S. § 490:2-313;

m.      Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.      Neb. Rev. Stat. § 2-313;

bb.      Nev. Rev. Stat. Ann. § 104.2313;

cc.      R.S.A. 382-A:2-313;

dd.      N.J. Stat. Ann. § 12A:2-313;

ee.      N.M. Stat. Ann. § 55-2-313;

ff.      N.Y. U.C.C. Law § 2-313;

gg.      N.C. Gen. Stat. § 25-2-313;

hh.      N.D. Cent. Code § 41-02-30;

ii.      II. O.R.C. Ann. § 1302.26;

jj.      12A Okl. St. § 2-313;

kk.      Or. Rev. Stat. § 72-3130;

ll.      13 Pa. Rev. Stat. § 72-3130;

mm.      R.I. Gen. Laws § 6A-2-313;

nn.      S.C. Code Ann. § 36-2-313;

oo.      S.D. Codified Laws, § 57A-2-313;

pp.      Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313; and

xx.    Wyo. Stat. § 34.1-2-313.

87.    Defendant breached the express warranty because the Products do not contain certain amounts of protein.

88.    As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b)    Awarding monetary damages and treble damages;

(c)    Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d)    Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e)    Awarding punitive damages;

31

(f)     Awarding Plaintiff and Class Members their costs and expenses incurred in this

action, including reasonable allowance of fees for Plaintiff's attorneys and experts,

and reimbursement of Plaintiff's expenses; and

(g)     Granting such other and further relief as the Court may deem just and proper.


Dated: July 26, 2022

                                   Respectfully submitted,

                                   **THE SULTZER LAW GROUP P.C.**

                                   Jason P. Sultzer /s/
                          By: _____
                                   Jason P. Sultzer, Esq.
                                   Joseph Lipari, Esq.
                                   Daniel Markowitz, Esq.
                                   85 Civic Center Plaza, Suite 200
                                   Poughkeepsie, NY 12601
                                   Tel: (845) 483-7100
                                   Fax: (888) 749-7747
                                   sultzerj@thesultzerlawgroup.com
                                   liparij@thesultzerlawgroup.com
                                   markowitzd@thesultzerlawgroup.com

                                   David C. Magagna Jr., Esq.
                                   Charles E. Schaffer, Esq.
                                   LEVIN SEDRAN & BERMAN
                                   510 Walnut Street, Suite 500
                                   Philadelphia, PA 19106
                                   Tel: 215-592-1500
                                   dmagagna@lfsblaw.com
                                   cschaffer@lfsblaw.com

                                   *Counsel for Plaintiff and the Class*